**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AJAY SINGH, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>PARETEUM CORPORATION, ROBERT TURNER, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>　　　　　　　　　　　　Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><br>**DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     JURISDICTION AND VENUE ................................................................................5

III.    PARTIES ...................................................................................................................6

IV.     BACKGROUND ........................................................................................................8

V.      PARETEUM DEFRAUDS INVESTORS .................................................................9

VI.     THE TRUTH BEGINS TO EMERGE ...................................................................24

VII.    CLASS ACTION ALLEGATIONS .........................................................................29

VIII.   LOSS CAUSATION .................................................................................................30

IX.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE ...............................................................................................31

X.      NO SAFE HARBOR ................................................................................................32

XI.     ADDITIONAL SCIENTER ALLEGATIONS .......................................................32

XII.    CAUSES OF ACTION .............................................................................................33

010855-11/1202947 V1

Plaintiff Ajay Singh, individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation review and analysis of (a) regulatory filings made by Pareteum Corporation ("Pareteum" or "the Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) research reports from securities and financial analysts and research firms; (c) Company press releases and reports; (d) Company website, social media posts and marketing materials; (e) news and media reports concerning the Company and other facts related to this action; (f) price and volume data for Pareteum securities; and (g) additional materials and data concerning the Company and industry as identified herein.

## I.    INTRODUCTION

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Pareteum securities between December 26, 2017 and October 21, 2019, inclusive (the "Class Period").  The claims asserted herein are alleged against Pareteum and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      This action arises from Defendants' material misrepresentations and concealments regarding Pareteum's true business operations and financial results.  Pareteum, a mobile networking software and services provider, presented itself to investors as a "rapidly growing Cloud Communications Platform company" that was poised for exponential growth due to the

Company's involvement in new industries such as block chain, customer wins, a rising "36-month contract revenue backlog," and effective contract conversion rates.

3.      The Company traces its origins to Elephant Talk Communications, a languishing company on the brink of failure.  Following the introduction of a new management regime led by CEO and Chairman Turner, the Company was re-branded as "Pareteum" and as "Global Cloud Communications Platform."

4.      The Company was able to increase its market capitalization twenty-fold between 2016 and 2019 by portraying itself as a high growth company in a barrage of press releases and social media posts touting its new customers and purported multi-million contracts.  Its press releases described the Company as a rapidly growing global cloud software communications platform company with a mission to connect "every person and every(thing)."  Defendants also touted a "36 month contract revenue backlog" (reaching $900 million) and promoted the Company's conversion rate of contract value and reported revenue growth.  Wasting no time, Defendants quickly leveraged the rising stock price to acquire at least two companies – Artilium plc ("Artilium") and iPass Inc. ("iPass").

5.      Analysts responded favorably to Defendants' claims regarding its purported 36-month contract backlog.  For instance, a December 20, 2018 analyst report from Northland Capital Markets reported that, "Over the past 12 months, Pareteum has won 90+ deals.  In the prior 3.5 years, the company had signed no new deals.  The company has also been adding $10+ million in ACV per quarter, and 3-year backlog has also grown dramatically to several hundred million dollars."  The report added that, "As Pareteum deploys its organic backlog and the overall company scales, Pareteum sees the ability to reach 70% gross margin again on the combined Pareteum/Artilium business."  Similarly, an analyst report from Maxim Group dated

January 11, 2019 stated, "TEUM has over $500M in three-year contracted revenue backlog, which provides strong visibility for revenue growth."

6.     Defendants' growth story similarly impressed industry commentators.  As a *Seeking Alpha* article put it: "Pareteum (TEUM-NASD) has been one of the best performing stocks of 2019 so far – up an astounding 300%+ in the last two and a half months.  (Sure beats oil stocks, and that's why I'm looking here.)  I've watched the run – and the chart has been tempting . . . one of my market lines is: At The End Of the Day, it's The Tape That Matters.  Price.  And the stock has done fabulously well."

7.     But contrary to Defendants' statements regarding great customer wins and multi-million dollar contracts, Pareteum's contracts were entered into with either fake entities, related-third parties, or companies so small they had no chance of ever satisfying the value Defendants assigned to their contracts.  In addition, Defendants misstated or manipulated its 36-month contract revenue backlog and revenue conversion metrics.  Further, the Company improperly and prematurely recognized revenue and reported inflated revenue and accounts receivable in its financial statements in violation of GAAP.  These false and misleading representations and omissions artificially inflated Pareteum's stock price.

8.     On June 7, 2019, investors started to learn the truth when research firm Marcus Aurelius Value issued a scathing report describing the Company's "massive downside potential" and noting its belief that "***the stock is completely uninvestible***."  The news caused Pareteum's stock to plummet 24% on June 7, 2019, from $3.39 per share to $2.58.  The Company, however, was able to stem additional losses by vehemently denying Marcus Aurelius Value's report, dismissing its findings as a "coordinated attack by short sellers."

9.      Then, on June 25, 2019, a second research firm, Viceroy Research ("Viceroy"), published a report entitled, "Pareteum - The Wild West of Telecoms."  Viceroy's report echoed many of the findings from the Marcus Aurelius Value Report, including that several of Pareteum's partner entities were either nonexistent, insolvent or lacked sufficient resources to satisfy reported contract values, "leading us to believe that they are Pareteum customers who are unable to pay or have no operations."  The Viceroy Report also noted that "Pareteum's 36-month contractual backlog measurement is not an accurate predictor of future profits."  The Viceroy Report further described Pareteum's growth story as "completely broken and may not have ever existed at all."  Following the Viceroy Report, the Company's stock declined another 20%, from $2.47 per share on June 25, 2019 to $2.00 per share at the close of trading on June 26, 2019.  On June 27, 2019, Defendants again denied the findings of Viceroy and Marcus Aurelius Value, claiming that the Reports "misrepresent[ed] facts" and made "spurious claims" against the Company.

10.      On August 26, 2019, the risks Viceroy and Marcus Aurelius Value warned about began to materialize.  Cash-strapped, the Company announced that it was forced to amend its credit agreement with senior creditor Post Road to get access to $2.5 million.  As part of the deal, Pareteum had to issue 750,000 shares to Post Road on August 22, 2019, and an additional 250,000 shares on November 15, 2019, thereby seriously diluting existing shareholders.  This news caused the Company's stock to drop another 17%, from $2.81 per share on August 26, 2019 to $2.33 at the close of trading on August 27, 2019.

11.      Then, on October 16, 2019, the Company announced the sudden and unexplained termination of Pareteum's Chief Operating Officer Denis McCarthy, who had been "deeply involved" with the "contract backlog" metric.  The Company also disclosed that it had retained

-4-

an executive search firm to assist with "assessing the board of directors and key leadership

positions," signaling that the departure of other high-level Pareteum officials was imminent.

Finally, media outlets, including Seeking Alpha, reported the likelihood that investors would

"need to prepare for another disappointing quarterly report with ongoing, material cash burn and

management potentially reducing future growth expectations."  This news caused the Company's

stock to drop another 25%, from $1.13 per share on October 16, 2019 to $0.83 at the close of

trading on October 17, 2019.

12.     On October 21, 2019, after the market closed, Pareteum announced that it would

restate its previously issued consolidated financial statements as of and for the full year ended

December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019.  According to

the Company, "[t]he decision to restate these financial statements is based on the Company's

conclusion that certain revenues recognized during 2018 and 2019 should not have been

recorded during that period.  For certain customer transactions, the Company may have

prematurely or inaccurately recognized revenue."

13.     All told, Pareteum has lost hundreds of millions of dollars in shareholder value

during the Class Period, and the shares remain down approximately 90% from their Class Period

high.

## II.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  A substantial part of the conduct complained

of herein, including the dissemination of materially false and misleading information to the

-5-

investing public and the omission of material information, occurred in this District.  In addition,

Pareteum Corporation is headquartered in this District.

16.     In connection with the acts, conduct, and other wrongs alleged herein, Defendants

directly or indirectly used the means and instrumentalities of interstate commerce, including,

without limitation, the U.S. mails, interstate telephone communications, and the facilities of the

national securities exchange.

### III.    PARTIES

17.     Plaintiff Ajay Singh, as set forth in the accompanying certification, incorporated

by reference herein, purchased Pareteum common stock during the Class Period, and suffered

damages as a result of the violations of the federal securities laws alleged herein.

18.     Defendant Pareteum Corporation ("Pareteum" or the "Company") is organized in

Delaware with its principal executive offices located in New York, New York.  Its common

shares trade on the NASDAQ, which is an efficient market, under the ticker "TEUM."  As of

October 20, 2019, Pareteum had nearly 133 million shares of stock outstanding, owned by at

least hundreds or thousands of investors.

19.     Defendant Robert "Hal" Turner ("Turner") was Pareteum's Chairman, and

Principal Executive Officer at all relevant times.

20.     Defendant Victor Bozzo ("Bozzo") was Pareteum's Chief Commercial Officer at

all relevant times.

21.     Defendant Edward O'Donnell ("O'Donnell") was Pareteum's Chief Financial

Officer at all relevant times.

22.     Defendant Denis McCarthy ("McCarthy") was the Chief Operating Officer of the

Company until October 9, 2019.

23.      Defendants Turner, Bozzo, O'Donnell and McCarthy are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with Pareteum, possessed the power and authority to control the contents of Pareteum's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

24.      The Individual Defendants are liable for the statements (and omissions of material facts) directly attributed to them and also the false statements pled below, as those statements were "group-published" information and the Individual Defendants were substantially involved in preparing, disseminating and certifying Pareteum's press releases and SEC filings. The Individual Defendants are also liable for Pareteum's false financial results, material omissions and acts in furtherance of the accounting and financial schemes to inflate Pareteum's results and projections, maintain artificially high market prices, and to enrich themselves. The Individual Defendants are also liable for participating in deceptive conduct, knowingly concealing facts necessary to render Pareteum's financial results and its statements not misleading, and for knowingly furnishing false information (and omitting material facts) to investors through Pareteum's earnings releases, SEC filings and conference calls. Pareteum's accounting manipulations were done for the specific purpose of inflating Pareteum's results to meet public

-7-

guidance, and it was necessary and inevitable that the fraudulent financial information would be communicated to investors.

## IV.    BACKGROUND

25.    Based in New York, Pareteum provides backend software services to Mobile Virtual Network Operators ("MVNOs"), which are essentially entities that provide wireless communications to customers by renting bandwidth from large carriers such as T-Mobile or AT&T.

26.    Pareteum was formerly known as Elephant Talk Communications Corp. ("Elephant Talk Communications") and changed its name to Pareteum Corporation in November 2016.

27.    Operating as Elephant Talk Communications, the Company was originally a languishing penny stock with declining revenues.  In late 2015, a new management, led by CEO and Chairman Turner, quickly engineered a reverse split and a series of private placements and acquisitions to rebrand the company as "Pareteum" – a "Global Cloud Communications Platform".

28.    Since then, the Company's market cap grew steadily from $25 million in 2016 to as high as $500 million in March 2019.  The Company's stock surged due to a stream of hundreds of Company-issued press releases and social media blasts touting the Company's customer wins, contract totals, and growing reported revenues and accounts receivable.

29.    The Company used high-tech buzzwords to describe its operations and capabilities, such as "Internet of Things", "machine learning", "super API", "predictive analytics", "smart cities", and "blockchain."  Pareteum also repeatedly promoted its increasing 36-month contractual backlog, proclaiming in April 2019 the figure was approaching $1 billion

-8-

(compared to trailing revenues of $50 million).  The Company's reported contract backlog was especially important to investors because it provided a metric by which they could gauge the potential profitability of the Company.  By reporting a purported backlog of close to $1 billion, Defendants signaled to investors that the Company's revenues would soon see parabolic growth.

## V.    PARETEUM DEFRAUDS INVESTORS

30.    The Class Period starts on December 26, 2017, the day Defendants began a promotion campaign of the Company's purported involvement in the "blockchain" industry in an effort cash in on the blockchain craze.  In particular, on December 26, 2017, the Company issued a press release entitled, "Pareteum Adds Blockchain Settlement for Cryptocurrency to Its Global Cloud Platform," wherein the Company proclaimed that "Smart City, Mobile Virtual Network Operators and Internet of Things Service Providers now Able to Exchange Digital Currency and Subsidize Service."

31.    Shortly thereafter, on January 2, 2018, the Company issued a press release entitled "Pareteum Showcases Efficiency of Global Cloud with Expedited Deployment of India Based Customer."  The Company proclaimed that the "Expedited Deployment of India Based Customer Platform" was "Positioned to Deliver Connections, Brand Management, and Settlement including Blockchain and Cryptocurrency."

32.    Similarly, on January 22, 2018, Pareteum issued a press release entitled, "Pareteum and AirFox Expand Blockchain Technology Partnership," which announced an "expan[sion of] [Pareteum's] relationship with AirFox by adding AirFox's Blockchain and AirToken (AIR) platform to the Pareteum Global Cloud Service Platform."[1]  In the release, Chief Commercial Officer Bozzo noted that the AirFox partnership would allow Pareteum to penetrate

---

[1] All emphasis in bold and italics is added, unless otherwise noted.

new markets, stating, "As we forge further into underserved markets, the advantage of the new

Internet paradigm shift in mobile allows investors to crowdsource regional opportunities that

were previously reserved for local services only.  CEO Turner underscored the "fundamental

revenue growth and profitability" the Pareteum-AirFox partnership would provide, stating:

> Pareteum and AirFox form a highly complementary technology
> partnership.  These new converged services, centered on the security
> offered via Blockchain and Pareteum's open source developed
> award winning software services for communication service
> providers, extend TEUM's abilities for person to person mobile
> payments, that are trusted.  We see new markets, faster services
> adoption and deeper market penetration occurring, as well as our
> inevitable march toward cloud based self-services, utilizing our
> insights gleaned from data analytics, for everything.  This bodes
> well for our partners AirFox and for Pareteum, in fundamental
> revenue growth and profitability.

33.     On February 6, 2018, the Company issued a press release entitled, "Pareteum

Publishes Blockchain White Paper Defining Opportunities in the Mobile Market: Extending our

SaaS Platform with Blockchain Technology."  In the press release, Ali Davachi, Chief

Technology Officer commented, "Pareteum is focused on delivering enabling technology to all

of its partners.  The TEUM Blockchain (TBC) will revolutionize how our customers leverage

Blockchain technology.  Enabling our SaaS platform with identity management, transaction

settlements and payment solutions greatly expands the opportunity for our customers."

Similarly, Defendant Turner is quoted as stating, "The Digital Economy, and its monetization,

requires trust, identity and device, identification, for the dependable completion of transactions.

These transactions may be payment system, financial, or application and content focused.

Pareteum's support of an enabling Blockchain powered solution assures that our

communications service provider customers, and, their retail, enterprise, and IoT customers, are

provided the highest available, GDPR compliant, security and payment systems solutions.  In

-10-

conjunction with our partner, AirFox, Pareteum's cloud platform will also service its customers by capturing new revenue streams in the telecommunications and IoT markets. Our cloud-based solution will enable the deployment of Blockchain services, delivered for our customers anywhere in the world."

34.     On March 30, 2018, Pareteum filed its Annual Report on Form 10-K for the year ended December 31, 2017 with the SEC, reporting that "Revenue for the year ended December 31, 2017 was $13,547,507, an increase of $691,696 or 5%, compared to $12,855,811 for the year ended December 31, 2016." Defendants attributed the increase to "the Company's focus on growing the mobile bundled services portion of the business." The Company also reported its accounts receivable for the year ended December 31, 2017 to be $2,058,284.

35.     In the section of the 2017 Form 10-K titled, "Controls and Procedures," Defendants affirmed that Defendants had evaluated Pareteum's internal control over financial reporting, that the Company's internal control over financial reporting was effective, and that there were no changes in the Company's internal control over financial reporting during the quarter ended December 31, 2017, that materially affected, or were reasonably likely to materially affect, the Company's internal control over financial reporting.

36.     In addition, the 2017 Form 10-K contained certifications pursuant to SOX Sections 302 and 906 signed by Defendants Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

37.     On April 16, 2018, the Company announced the issuance of a shareholder update letter from CEO Turner. In the letter, Turner claimed, "Pareteum is on to a rapid start for 2018 in all meaningful areas." Turner stated that at the end of the first quarter 2018, Pareteum's "36

-11-

Month Contractual Revenue Backlog now sits at $200 million, with expectations for continued, and, even accelerated growth."

38.     On May 7, 2018, the Company issued a press release announcing "record" first quarter 2018 results for the period ended March 31, 2018, which was subsequently filed with the SEC on May 11, 2018 on Form 8-K and signed by CFO O'Donnell.  In the press release, Defendants boasted that Pareteum's "Revenues increased by 47% to $4.113 million."  Under the "Key Business Highlights for First Quarter 2018" section, the Company noted that it was "Awarded 14 contracts aggregating to $60 million in total contract value, which added $53 million to 36-month contractual revenue backlog" and "Increased 36-month contractual revenue backlog from $147 million at 12/31/17 to $200 million."  Pareteum also claimed a "Backlog revenue conversion at 103%."

39.     On May 11, 2018, Defendants filed Pareteum's Quarterly Report for the first quarter of 2018 with the SEC on Form 10-Q, wherein the Company again reported quarterly revenues of $4,112,750.  The Company also reported $1,954,495 in accounts receivable for the quarter.  The Company further affirmed that its financial statements were "prepared in accordance with accounting principles generally accepted in the United States, or GAAP."  Defendants also affirmed the effectiveness of Pareteum's internal controls over financial reporting and provided SOX certifications.

40.     On July 18, 2018, the Company issued a press release entitled "Pareteum Awarded $10 Million Contract From Asian Mobile And Cryptocurrency Enterprise."  Defendant Bozzo stated, "This established Currency Settlement Provider has chosen Pareteum because of our ability to deliver a solution that will enable them to expand their marketing operations and customer base, without a large cash investment.  Utilizing Pareteum's Insights Engine in

-12-

conjunction with our GCSP will allow the customer to manage all their service offerings from a single point of delivery.  Similarly, Defendant Turner noted, "Pareteum consistently executes on promises made by simply doing what we said we would do.  Our new client will now use our artificial intelligent Insights Engine, along with our advanced, software based, computer API applications, for payment services that utilize blockchain, as well as digital payments and settlements.  This leading-edge software solution, tailored for the specific uses of our client, means trustful and secure payment system transactions among advertisers, subscribers and our client.  We are very pleased to bring reality to trends and concepts for our clients.  We see many more steps ahead, and we are expecting to execute 'BIG and Globally' for all who need this software solution and our API's!"

41.    On August 2, 2018, Pareteum issued a press release entitled, "Pareteum Attains $300 Million Milestone in 36-Month Contractual Revenue Backlog," announcing that the Company's "current 36-Month Contractual Revenue Backlog (36MCRB) has grown to an astonishing $301 Million," that the Company had "added $46 Million to its 36MCRB with ten (10) new customer agreements the last 36 day," and that "Achieving this tremendous milestone represents a 393% increase from a year earlier, when in July 2017, our 36MCRB was $61 million."  In the press release, Defendant Turner was quoted as saying, "This latest triumph delivers on what we said we would do, and the results show it.  We are a force to be reckoned with.  Our momentum will not stop here: our vision to provide connectivity for Any Device, Any Network, Anywhere™, continues to disrupt the industry.  We are on a torrid sales pace and we are On Fire with relentless forward motion and passion for customers and meeting their global service needs."

-13-

42.     On August 6, 2018, Defendants issued a press release announcing "Record Second Quarter 2018 Results."  Defendants claimed that Pareteum's "Revenues increased by 85% to $6 million;" that over the quarter the Company was "Awarded 13 contracts aggregating to $55 million in total contract value, which added $55 million to 36-month Contractual Revenue Backlog" and that Pareteum had "Increased 36-month Contractual Revenue Backlog from $200 million at End of the first quarter of 2018 to $276 million" and that Pareteum's "Contractual Revenue Backlog conversion rate [was] at 106%."

43.     Later on August 13, 2018, Defendants filed Pareteum's Quarterly Report for the second quarter of 2018 with the SEC on Form 10-Q, wherein the Company reported quarterly revenues of $6,003,180.  The Company $3,852,866 in accounts receivable for the quarter.  The Company further affirmed that its financial statements were "prepared in accordance with accounting principles generally accepted in the United States, or GAAP."  Defendants also affirmed the effectiveness of Pareteum's internal controls over financial reporting and provided SOX certifications.  Analysts, including Robert M. Wasserman of Dawson James, took note of Pareteum's "very positive quarterly financial results."  In an August 20, 2018 report to TEUM investors, Wasserman exclaimed, "With a new, experienced management team, growing revenues and increased backlog stressing recurring revenue and higher-margin contracts, an improved balance sheet and successful cost-reduction program, long-term investors have much to like about Pareteum."

44.     On September 17, 2018, Defendants issued a press release entitled, "Pareteum Secures $50 Million in New Contracts During August," which announced the "signing of contracts totaling an additional $50 Million during the last two weeks of August 2018." Defendants stated, "These new contracts do not include any previously announced awarded

-14-

contracts.  The 36-Month Contractual Revenue Backlog (36MCRB) totaled $375 million at

August 31, 2018."  In the same press release, Defendant Turner is quoted as stating:

> Customers are accelerating new revenues and substantial savings in
> ever increasing numbers.  It is Pareteum's Global Software Defined
> Cloud, with its SuperAPI that makes this possible, affordably for our
> customers.   We have assembled a first class sales executive
> organization, led by Rob Mumby and Vic Bozzo, who with their
> colleagues are empowering Pareteum customers with disruptive and
> innovative solutions, every day.   This is how *we deliver new
> services creation*, enabling *new revenues*, and operational
> efficiencies.   ***Our customers' inevitable business growth and
> competitiveness is why they keep signing new agreements***.

45.     That same day, CEO Turner also took to Twitter to promote Pareteum's purported

new deal with Eyethu Mobile Network ("Eyethu"), describing the agreement as "***bringing

change to South Africans with surprisingly unlimited cheapest data bundle***."



46.     On October 2, 2018, Defendants issued a press release entitled, "Pareteum Adds

$15 Million in New Contracts," which announced $15m in new contracts with three companies:

Parallax Health Sciences, Inc. ("Parallax") in the U.S., oneCentral ("oneCentral") in the

Netherlands, and Naledi Telecom ("Naledi") in South Africa. Regarding the contracts,

Defendants stated:

> Parallax Health Sciences is Pareteum's first customer in the
> healthcare IT industry; it will use Pareteum's platform as a service
> to assist healthcare professionals in diagnosing and tracking health
> trends with their patients via data and SMS bundling.   The
> technology integration will result in the establishment of Parallax

-15-

Communications becoming an industry first: a globally-connected, remote patient care, mobile virtual network operator.

oneCentral is a Netherlands-based provider of telecom and cloud services; Pareteum will enable oneCentral to provide mobility bundles to its customers including voice, SMS, and data.

Additionally, Pareteum will deliver its full platform as a service to Lesotho, South Africa-based Naledi Telecom, enabling it to launch as the first mobile virtual network operator there.

47.     In the press release, Bozzo is quoted as stating:

**Pareteum's momentum continues to grow as we close on these multimillion dollar contracts**, . . .  With these new use cases, we are not only **building a pipeline for our growing business**, but also enabling mobile solutions for companies across industries, including the ever-important healthcare technology space.

48.     In the same press release, Turner added:

We celebrate every new customer that chooses Pareteum's platform to grow their business.  **With Parallax, oneCentral, and Naledi Telecom, we are adding mobile enablement solutions for companies that serve people across the world**, and many of these people are in markets yet touched by the power of Pareteum's seamless and agile platform solution and SuperAPI.

49.     On October 8, 2018, Defendants issued a press release entitled, "**Pareteum Expands Customer Base in Asia with 3-year $50 Million Contract**."  The press release announced a $50 million contract with One Development, which Defendants described as "Thailand's first mobile virtual network aggregator and enabler, and leader in the country's growing mobile virtual network operator market."  Defendant Turner added:

One Development's slogan is **'We connect Thailand**,' and **Pareteum is at the ready to help them do that;** when our customers succeed, we succeed.  With One Development in Thailand, **we are literally connecting to a whole new world of customers** and chances to make an impact in the global platform as a service space.

-16-

50.     On October 17, 2018, Defendants issued a press release entitled, "**Pareteum**

**Announces $8 Million in New Agreements**."  The press release announced "agreements with

four new customers valued at $8 million, including monogoto and Nextelle."  Regarding the

contracts, Defendants stated:

> Pareteum's new use cases include the following:
>
> Global Software Defined Cloud Platform and SuperAPI white label for monogoto, a platform as a service company providing an interface to onboard devices, build out internet of things solutions, and program APIs to scale with existing apps and services.
>
> Global Software Defined Cloud Platform solutions via real-time connectivity, monitoring, and billing for Nextelle, a mobile virtual network operator offering broadband home services and pre-paid wireless.
>
> Global Software Defined Cloud Platform and SuperAPI solution to capture water analysis data wirelessly and in real time for an international water technologies company handling smart metering.
>
> Global Software Defined Cloud Platform and SuperAPI solution for the pet tech industry, enabling a pet device monitoring company to connect its internet of things devices wirelessly, and securely manage massive volumes of data with real-time access for monitoring and billing solutions.

51.     In the press release, Turner stated:

> I have said it before: We celebrate every new customer that chooses Pareteum's solutions to grow their business.  **With these new agreements, we are adding cloud platform and mobility options for companies that are changing the world through technology**.

52.     Rob Mumby, Pareteum's chief revenue officer, also stated:

> Pareteum is excited to be at MVNO North America, where we look forward to meeting new customers like monogoto and Nextelle. **Our customers are the reason Pareteum's momentum continues to grow** . . .  With these new use cases, we are not only **building a pipeline for our growing business**, but also showing potential customers the broad reach of our platform as a service, including smart metering and pet tech.

-17-

53.     On November 7, 2018, Defendants issued a press release announcing "Record Third Quarter 2018 Results."  Defendants claimed that Pareteum's "Revenues increased by 129% to $8 million," that the Company had been "Awarded 19 contracts aggregating to $403 million in total contract value, which added $127 million to 36-month Contractual Revenue Backlog," that Pareteum had "Increased 36-Month Contractual Revenue Backlog from $276 million at end of the second quarter of 2018 to $403 million," and that Pareteum's "Contractual Revenue Backlog conversion rate was at 100%."  Commenting on the quarterly results, Defendant Turner stated, "The quarter ended September 30, 2018, marks our continued evolution into a high-growth, software-based, enabling cloud services company.  Surpassing $8 million in revenues in the third quarter demonstrates the efficiency of our employees in converting our Contract Revenue Backlog into revenue. . . .  We are continuing to grow our revenues, clearly seen in our results as we are driving financial performance and cash to the bottom line.  Key performance indicators of Connections, Contract Revenue Backlog conversion, Connection values, revenue-per-employee and churn continue to all move in the right direction and give us confidence in our overall strategy and business execution."

54.     Later, on November 14, 2018, Defendants filed Pareteum's Quarterly Report for the third quarter of 2018 with the SEC on Form 10-Q, wherein the Company reported quarterly revenues of $8,007,734.  The Company also reported $7,200,014 in accounts receivable for the quarter.  The Company further affirmed that its financial statements were "prepared in accordance with accounting principles generally accepted in the United States, or GAAP."  Defendants also affirmed the effectiveness of Pareteum's internal controls over financial reporting and provided SOX certifications.

-18-

55.     On February 14, 2019, Pareteum issued a press release entitled "Pareteum Grows FY2018 36 Month Contract Revenue Backlog to $615M: TEUM sales surge yields $15 million in new contracts in the final two weeks of the year."  The press release announced that Pareteum had "closed FY2018 with six new three-year agreements with new and existing customers, worth a total of $15 million.  Combined with previously announced contracts, Pareteum's 36-month contractual revenue backlog now totals $615 million."  The press release quoted Defendant Mumby as stating, "Our strong position at the end of 2018 is exceeded by further strong growth into 2019 and indicates the scale of opportunities open to Pareteum.  We continue to have a strong focus on sales and our service delivery as we launched eight customers in December.  We have never been better positioned to empower businesses with the latest connectivity and cloud platform mobility solutions."

56.     On March 12, 2019, Defendants issued a press release entitled "Pareteum Announces Fourth Quarter and Full Year 2018 Financial Results."  For the fourth quarter, Defendants stated "Total revenues increased 256% to $14.3 million."  For the full year 2018, Defendants stated, "Revenues increased 139% to $32.4 million" and that the "36-month Contractual Revenue Backlog quadrupled to $615 million for the full year 2018, up from $147 million in 2017 with a conversion rate to revenue of 100%."  Defendant Turner is quoted as stating, "We are extremely pleased with Pareteum's significant results in 2018 which are attributed to our TEUM's laser focus on sales expansion and operational improvements.  Looking ahead to 2019, we are very excited about the tremendous opportunities for Pareteum given the strong industry dynamics; our visibility into future revenue from our 36 Month Contractual Revenue Backlog; and, the augmented talent, product, services, network expansion and productivity improvements implicit from our strategic acquisitions."

-19-

57.     On March 18, 2019, Pareteum filed its Annual Report on Form 10-K for the year ended December 31, 2018 with the SEC, reporting that "Revenue for the year ended December 31, 2018 was $32,435,736, an increase of 18,888,229 or 139%, compared to $13,547,507 for the year ended December 31, 2017." Defendants attributed this "due to the Company's focus on growing the mobile bundled services portion of the business which accounted for $11,380,870 of revenue for the full year of 2018, which is 35% of the total revenue for the year. Additionally, the Q4-2018 revenues from our newly acquired subsidiary Artilium contributed $5,171,680 of revenues." The Company also reported its accounts receivable for the year ended December 31, 2018 to be $15,361,594.

58.     In the section of the 2018 Form 10-K titled, "Controls and Procedures," Defendants affirmed that Defendants had evaluated Pareteum's internal control over financial reporting, that the Company's internal control over financial reporting was effective, and that there were no changes in the Company's internal control over financial reporting during the quarter ended December 31, 2018, that materially affected, or were reasonably likely to materially affect, the Company's internal control over financial reporting.

59.     In addition, the 2018 Form 10-K contained certifications pursuant to SOX Sections 302 and 906 signed by Defendants Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

60.     On April 2, 2019, Pareteum issued a press release entitled "Pareteum wins $22 million contract with Digital Currently Wi-Fi Provider," wherein Defendants represented that Pareteum had secured a $22 million contract with a "Blockchain Wi-Fi sharing solution to harness Pareteum's global cloud."

-20-

61.     On May 7, 2019, Pareteum issued a press release subsequently filed with the SEC on May 9, 2019 on Form 8-K, announcing first quarter 2019 results.  Defendants stated that "Total revenues increased 460% to $23 million," and that the "36-Month Contractual Revenue Backlog increased to $938 million for the first quarter of 2019, up from $200 million in the first quarter of 2018 with a conversion rate to revenue of 101%."  The press release quoted Defendant Turner as stating, "We are very pleased with our strong first quarter results, delivering 460% revenue growth in Q1 2019 compared to Q1 2018.  Pareteum's core business, pre-acquisitions, has grown 33% over the prior quarter. . . .  Pareteum is a fast-growing and profitable SaaS and communications service provider."

62.     Later, on May 10, 2019, Defendants filed Pareteum's Quarterly Report for the first quarter of 2019 with the SEC on Form 10-Q, wherein the Company reported quarterly revenues of $23,039,913.  The Company also reported $9,225,001 in accounts receivable for the quarter.  The Company further affirmed that its financial statements were "prepared in accordance with accounting principles generally accepted in the United States, or GAAP."  Defendants also affirmed the effectiveness of Pareteum's internal controls over financial reporting and provided SOX certifications.

63.     On May 28, 2019, during an analyst day presentation, Defendants presented analysts with the following slide of "Notable Pareteum Partners and Customers":



64. Defendants' statements referenced above in ¶¶ 29-62 were materially false and misleading because, among other things:

a. While Pareteum management heavily promoted the Company's blockchain business in several press releases, in truth, the Company was not involved in any blockchain transactions and none of the Company's services that had been launched accepted crypto currency for payment. The Company generated no revenue from customers utilizing Pareteum's platfoms for blockchain-related services and the Company had no plan to do so in the future. Indeed, the Company had no plans to no plans to engage in any crypto currency mining, had no plans to create their own digital currency and had no plans to act as a verification service for digital currency.

b. Though Pareteum management heavily promoted the Company's professional partnership with AirFox, AirFox had not deployed any mobile-phone related

-22-

services, had discontinued this portion of their business, and the Company had no plans

to generate any revenue from its relationship with AirFox.

       c.      Despite the Company's promotional press releases of large customer wins,

several of Pareteum's customers were either related parties, fake, non-existent

companies, severely under-capitalized companies incapable of accounting for the revenue

reported by Pareteum, or inactive or unverifiable entitles.  As demonstrated in the Marcus

Aurelius Value and Viceroy Reports, these entities include Iboconnec.com, Ecrosspay

Limited, Voiptrade.pareteum.cloud & BigAppleMarketing.pareteum.cloud,

Exaccta.pareteum.cloud, JVT.pareteum.cloud, Integral.pareteum.cloud,

Grafana.pareteum.cloud, Hawkins.pareteum.cloud, Apeiron.pareteum.cloud,

Ota.pareteum.cloud, rgw.pareteum.cloud, sd.pareteum.cloud, Parallax Health Sciences,

oneCentral, Naledi, One Development, Monogoto, Nextelle, SJ Global Investments

London, Global Connect, WorldSim, Moby, Secure Watch, Eyethu Mobile Network, and

Sol Mobile.

       d.      Pareteum's 36-month contractual backlog measurement and conversion

rate were significantly overstated, deceptive and not an accurate predictor of future

profits.  Defendants were inflating these figures to hype up the share price and reassure

investors.

       e.      Given the non-existence of Pareteum's purported customers, the

customers' inability to pay for Pareteum's purported services, and Pareteum engaging in

premature revenue recognition, Pareteum's reported revenue and accounts receivable

were materially overstated.

f.     Defendants maintained ineffective internal controls over financial reporting, including for the recognition of revenue and reporting of accounts receivable. Further, contrary to their SOX certifications, Defendants knew that Pareteum's SEC filings contained untrue statements of material fact and that the financial statements and other financial information included in the SEC filings did not fairly present in all material respects the financial condition, results of operations and cash flows of Pareteum for fiscal year 2017.  Moreover, Defendants failed to disclose all significant deficiencies and material weaknesses in the design and operation of Pareteum's internal control over financial reporting likely to adversely affect Pareteum's ability to record, process, summarize and report financial information, as well as the financial fraud that Defendants and other employees with significant roles in Pareteum's internal control over financial reporting were committing.

## VI.     THE TRUTH BEGINS TO EMERGE

65.     The first indication that Pareteum had misled investors came on June 7, 2019, when Marcus Aurelius Value released an investigative report revealing that "[Pareteum]'s public claims simply don't hold up to investigative scrutiny."  As an example of the Company's fabrications, the report noted the Company's October 2018 contract with Naledi Telecom, announced as part of a purported "$15 Million in New Contracts."  In reality, according to official records, the company had been formed in May 2018 with less than "1000" in share capital, its website was not functional, and investigators found no activity at its supposed office. By all accounts, Naledi was not operational, and may have instead been set to launch at an unspecified later date.

66.     In another example of the implausibility of Pareteum's claims, the report pointed to Defendant's announcement of its "$50 million contract" with One Development, a Thai company.  Official records filed in Thailand reported that the company had no revenue in 2018, operating losses for each of the three years presented, total assets of about $298k, and investigators could not find an office for the company.  One Development's presentation materials explain that its business plan is to entice MVNOs to launch in Thailand and then sell them services.  But even though the business was founded in 2013, it does not appear to have gained much traction.

67.     Among the other findings in the report were Pareteum's management's extensive ties to previous alleged "Frauds and Failures," the exaggerated or fictitious nature of the Company's purported $900 million backlog, the potential accounting problems signaled by the Company's backlog conversion and receivables, and the Company's history of "Surround[ing] Itself with Veterans from Failed Stock Promotions."

68.     Following the Marcus Aurelius Value report, the price of Pareteum shares plummeted from $3.39 per share to $2.58, down by about 24%, on June 7, 2019.

69.     On June 10, 2019, Defendants released a letter in response to Marcus Aurelius Value's report, which noted that the Company's "share price has been negatively impacted by a coordinated attack by short sellers," and that "certain short sellers have used questionable tactics, including leveraging the media to misrepresent facts and make anonymous spurious claims against the company and its officers."  Pareteum's response further stated that Defendants "**categorically deny the allegations put forth . . . Pareteum has experienced tremendous growth, and we continue to grow in a healthy and measurable way**."

70.     On June 25, 2019, Viceroy Research Group released an investigative report revealing the following findings from its investigation of the Company and its investigative officers:

- Further to recent research reports, Pareteum has a history of promotional press releases of customer wins. A deeper investigation into these customers show much larger number are insignificant, and the companies behind them appear in no way capable of fulfilling the contract values advertised by Pareteum.

- Two of Pareteum's customer wins appear to be undisclosed related parties tied to Pareteum consultant Dinesh "Danny" Patel.

- One of Pareteum's announced customer wins is a company under a historic investigation and charged with significant VAT evasion fraud. Information on this is easily available, leading us to believe that Pareteum was aware of the company's issues while announcing the customer win.

- Pareteum appears to be in breach of US sanctions against Iran through its provision of services to Iranian MVNO Amin SMC. Amin SMC appears to be chaired by Hamid Reza Amirinia, an individual suspected of breaching sanctions with an Iranian government mandate to launder money for the regime.

- Several entities on the pareteum.cloud domain are small companies or have no web presence whatsoever, leading us to believe that they are Pareteum customers who are unable to pay or have no operations.

- Pareteum's 36-month contractual backlog measurement is not an accurate predictor of future profits. An analysis of the company's backlog and management comments shows it should have reported 73.10% more revenue in Q1 2019 than it did. Management appears to be inflating this figure to hype up the share price and reassure investors.

- Pareteum's management has a history of dishonest reporting. Notably, CFO Ted O'Donnell who was sued by former employer AudioEye for fabricating US$8.1m worth of revenue over 3 quarters which was found to have no supporting documentation. This was an overstatement of revenues in the period of more than 3,000%.

-26-

- Pareteum's rapid-fire announcement of customer wins mirrors its announcements regarding cryptocurrency in 2017, which were put to an abrupt halt when a response to an SEC letter revealed TEUM had made no revenue, nor planned to do so, from cryptocurrency.

- Pareteum has made an US$3.7m loan to Yonder Media Mobile, an early stage MVNO operated by serial failure entrepreneur Adam Kidron.  Kidron has burned at least US$100m in his enterprises, having already cratered the Yonder brand with a music streaming service which collapsed in 2017.

- A breakdown of Pareteum's revenues, cash flows and receivables show the majority of its revenue from sources other than Vodafone and acquired businesses iPass and Artilium appears to be uncollectable.

71.     The report also revealed:

> Accordingly, we believe total revenue is overstated by 42%, corroborating our findings regarding Pareteum's customers.

72.     Following the Viceroy Research Group's report, the price of Pareteum shares fell another 20%, from $2.48 per share on June 25, 2019 to $2.00 per share at the close of trading on June 26, 2019.

73.     On June 27, 2019, Defendants released a statement in response to both the Viceroy report and the Marcus Aurelius Value report, falsely stating that "***Pareteum Corporation categorically denies all allegations*** put forth in the short seller reports," and specifically denying the claims that the Company had breached U.S. sanctions against Iran.

74.     Thereafter, the Company continued to release false information to the market, including on August 6, 2019, when the Company issued a press release announcing second quarter 2019 financial results, later filed on August 13, 2019 with the SEC on Form 8-K.  The Company falsely stated that "Total revenue increased 469% to $34.1 million."  Significantly, however, the Company refrained from providing its 36-month contract backlog and conversion rate metrics.

75.     But then on August 26, 2019, desperate for cash, the Company announced that it was forced to amend its credit agreement with senior creditor to get access to $2.5 million.  As part of the deal, Pareteum had to issue 550,000 shares to Post Road on August 22, 2019, and additional 250,000 shares on November 15, 2019, thereby seriously diluting existing shareholders.  This news caused the Company's stock to drop another 17%, from $2.81 per share on August 26, 2019 to $2.33 at the close of trading on August 27, 2019.

76.     Further, on October 16, 2019, *Seeking Alpha* reported that the Company had "surprisingly" terminated COO Denis McCarthy "without providing further details."  According to the report, "McCarthy ha[d] been deeply involved with Pareteum's self-introduced 36-Month-Contract-Backlog metric which ha[d] come under increased scrutiny" following the Viceroy and Marcus Aurelius Value reports.  The report also noted the Company's retention of Heidrick & Struggles, an executive search firm, to assist with "assessing the board of directors and key leadership positions."  The report further noted that investors "likely need to prepare for another disappointing quarterly report with ongoing, material cash burn and management potentially reducing future growth expectations."  This news brought the Company's stock down another 25%, from $1.13 per share on October 16, 2019 to $0.83 at the close of trading on October 17, 2019.

77.     Finally, on October 21, 2019, Pareteum announced that it "will restate its previously issued consolidated financial statements" for its 2018 fiscal year and its first and second quarters of 2019.  The decision to restate was based on a conclusion that the Company improperly recorded revenues in 2018 and the first two quarters of 2019.  Investors were warned to no longer rely on the company's previously issued financial results. This news brought the

-28-

Company's stock down from $0.73 per share on October 21, 2019 to $0.30, or about 59.53% lower on October 22, 2019.

## VII.    CLASS ACTION ALLEGATIONS

78.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of persons and entities who purchased or otherwise acquired Pareteum securities between December 26, 2017 and October 21, 2019 inclusive (the "Class").  Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

79.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Pareteum securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained or controlled by Pareteum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

80.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

> a.     Whether the Defendants violated the Exchange Act;

> b.     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

-29-

c.      Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

d.      Whether the price of the Company's securities was artificially inflated; and

e.      The extent of damage sustained by Class members and the appropriate measure of damages.

81.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

82.     Plaintiff will adequately protect the interests of the Class and has retained experienced counsel. Plaintiff has no interests that conflict with those of the Class.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VIII.   LOSS CAUSATION

84.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

85.     Throughout the Class Period, the market price of Pareteum securities was inflated by the material omissions and false and misleading statements made by the Company and the Individual Defendants, which were widely disseminated to the securities markets, investment analysts and the investing public.  The false and misleading statements materially misrepresented

-30-

to the market the Company's core operation and caused Pareteum securities to trade in excess of their true value.

86.     As a result, Plaintiff purchased Pareteum securities at artificially inflated prices. When the partial truth about Pareteum's core operation was revealed to the market, the price of its shares declined in response, as the artificial inflation caused by Defendants' misrepresentations and omissions was partially removed from the price of Pareteum shares, thereby causing substantial damages to Plaintiff and the Class.

## IX.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

87.     At all relevant times, the market for Pareteum shares was an efficient market for the following reasons:

a.     Pareteum shares met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.     As a regulated issuer, Pareteum filed periodic public reports with the SEC and the NASDAQ;

c.     Pareteum regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.     Pareteum was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain

customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

88.     As a result of the foregoing, the market for Pareteum shares promptly digested current information regarding Pareteum from all publicly available sources and reflected such information in the prices of the shares.  Under these circumstances, all purchasers of Pareteum shares during the Class Period suffered similar injury through their purchases at artificially inflated prices and/or purchases of options tied to the artificially inflated price and a presumption of reliance applies.

## X.     NO SAFE HARBOR

89.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements were made because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Pareteum who knew that those statements were false when made.

## XI.     ADDITIONAL SCIENTER ALLEGATIONS

-32-

90.     Plaintiff repeats and realleges each and every paragraph contained above as if set forth herein.

91.     The Individual Defendants acted with scienter with respect to the materially false and misleading statements and omissions of material facts set forth above because they knew, or at the very least, recklessly disregarded that those statements were materially false or misleading when made.  As senior executives of Pareteum, their scienter is imputed to Pareteum.

92.     As alleged herein:

        a.     Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading;

        b.     Defendants knew that such statements or documents would be issued or disseminated to the investing public;

        c.     Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws; and

        d.     Defendants, by virtue of their receipt of information reflecting the true facts regarding Pareteum, their control over, and/or receipt and/or modifications of Pareteum's allegedly materially misleading statements and/or their associations with the Company, which made them privy to confidential proprietary information concerning Pareteum, participated in the fraudulent scheme alleged herein.

### XII.   CAUSES OF ACTION

### COUNT I

### VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER (AGAINST ALL DEFENDANTS)

93.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

-33-

94.     By reason of the conduct described above, Pareteum and the Individual Defendants, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, directly or indirectly:

      a.     Used or employed devices, schemes, or artifices to defraud;

      b.     Made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      c.     Engaged in acts, practices, or courses of business, which operated or would operate as a fraud or deceit upon other persons, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

95.     While engaging in the conduct described above, Pareteum and the Individual Defendants acted knowingly or recklessly.

96.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Pareteum shares.  Plaintiff and the Class would not have purchased Pareteum shares at the prices they paid, or at all, if they had known that the market prices were artificially and falsely inflated by Defendants' misleading statements.

97.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Pareteum shares during the Class Period.

## COUNT II

### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
### (AGAINST TURNER, BOZZO, O'DONNELL, AND MCCARTHY)

98.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

99.     Turner, Bozzo, O'Donnell and McCarthy acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as senior executives and/or directors of Pareteum, they had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.  By reason of such conduct, Turner, Bozzo, O'Donnell and McCarthy are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Lead Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff's counsel as Lead Counsel;

Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


DATED:  October 23, 2019                    Respectfully submitted,

                                            HAGENS BERMAN SOBOL SHAPIRO LLP

                                            By  */s/ Jason A. Zweig*
                                                 JASON A. ZWEIG, JZ-8107

555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

Reed R. Kathrein (*pro hac vice* pending)
Danielle Smith (*pro hac vice* pending)
Lucas E. Gilmore (*pro hac vice* pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for Plaintiff*

-36-

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW

The individual or institution listed below ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed a complaint alleging securities fraud against Pareteum Corp. and various of its officers and directors, and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities law.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| TEUM | 5/7/19 | 39239 | 4.99 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
| TEUM | 6/18/19 | 39239 | 2.72 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below: NONE                                    .

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____
(Signature of Representative Plaintiff)

Date Signed: October 23, 2019
_____

Name (print): Ajay Singh
_____